IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE WALTER, | : | |
| Plaintiff, | : | 4:08-cv-1586 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| CUMBERLAND VALLEY SCHOOL | : | |
| DISTRICT, WILLIAM E. HARNER, | : | |
| MICHELLE ZETTLEMOYER, | : | |
| FRANCES CAROTHERS, KAYE | : | |
| WISHARD, HAROLD BRICKER, | : | |
| JOHN GALLAGHER, and | : | |
| LYNETTE SNYDER, | : | |
| Defendants. | : | |

## **MEMORANDUM**

## **June 10, 2010**

## **THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is the Defendants'[1] Motion for Partial Summary Judgment ("the Motion") (Doc. 50) filed on February 2, 2010. Despite being granted an extension of time within which to do so, Plaintiff Jeanne Walter ("Plaintiff" or "Walter") has not opposed the Defendants' Motion, thus we shall deem the Motion as unopposed pursuant to Local Rule 7.6. Accordingly, the Motion is ripe for our review.

---

[1] The Motion is filed on behalf of the Cumberland Valley School District ("District"); William E. Harner, Michelle Zettlemoyer, Frances Carothers, Kaye Wishard, Harold Bricker, John Gallagher and Lynette Snyder.

1

## I. PROCEDURAL HISTORY

Plaintiff initiated this action, through counsel, on August 23, 2008 by filing a Complaint. (Doc. 1). Thereafter, on May 21, 2009, the Plaintiff filed an Amended Complaint seeking recovery pursuant to the American with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. 21). By Memorandum and Order dated October 21, 2009, we dismissed all of the official capacity claims against the individual Defendants and dismissed all claims for punitive damages against the District. (Doc. 41). Following the close of discovery in this matter, the Defendants filed the instant Motion with supporting brief and exhibits.

On April 2, 2010, Plaintiff filed a motion for extension of time, *nunc pro tunc*, to file an opposition to the Defendants' Motion. (Doc. 68). By Order dated April 5, 2010, we granted the Plaintiff's Motion and required an opposition brief to be filed by April 12, 2010. (Doc. 69). Despite being granted this extension, Plaintiff never filed an opposition to the Defendants' Motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III.　FACTS[2]

The Plaintiff was hired by the District in 1974 to teach 9th grade English. (Statement of Uncontested Facts (hereinafter "SF"), 1). The Plaintiff subsequently taught 9th grade English for a period of six years. (SF 2). The Plaintiff has a teaching certification in comprehensive English and is also certified as a Reading

---

[2] Pursuant to Local Rule 56.1, all material facts set forth by the movant are deemed admitted unless controverted by the non-movant in a counter-statement of material facts. As discussed above, Plaintiff has filed no opposition to the instant Motion, accordingly we shall deem all of the movant's facts contained in the Defendants' "Concise Statement of Uncontested Facts" as admitted.

Specialist. (SF 3). As a Reading Specialist, pursuant to the Pennsylvania Department of Education, a Reading Specialist Educator may teach English courses in middle grades seven through nine. (SF 4).

In or around 1980, Plaintiff was interviewed and was hired as a District reading teacher. The Plaintiff was responsible for teaching reading skills in grades 9 through 12. (SF 5). The Plaintiff continued in the position of English reading teacher for approximately 15 years. (SF 6).

In or around 1994 or 1995, the Plaintiff was involuntarily transferred to a full-time 10th grade English teacher position. The Plaintiff continued in that position for approximately five to six years. (SF 7).

In 2001, the Plaintiff was transferred to an 11th and 12th grade position wherein she taught English to juniors and seniors at the District High School. (SF 8). In her 30-plus years at the District, the Plaintiff taught 11th and 12th graders full-time for a total of three years. (SF 9).

In April 2004, Allison Rose, an 8th grade teacher at Eagle View Middle School, requested childrearing leave for the upcoming 2004-2005 school year. (SF 10). Now-deceased Superintendent, Dr. Jean Walker, determined that this upcoming vacancy was a "mission critical" position to fill because of the importance of the Pennsylvania State Standardized Assessment ("PSSA") tests in

5

8th grade. (SF 11). As a result, and after discussing the appropriate people to fill that position, the District involuntarily transferred the Plaintiff to an 8th grade English teacher position at the Eagle View Middle School because of her specific educational background and teaching ability. (SF 12). The sequence and factual background related to the transfer are as follows.

On May 21, 2004, Plaintiff received an email from her supervisor, Dr. Fran Carothers, which indicated that Dr. Carothers wanted to meet with the Plaintiff to discuss a change in her teaching assignment for the 2004-2005 school year. (SF 13). In that email, Dr. Carothers asked Plaintiff to "email me with a time that we can meet." (SF 14). Instead of responding to the email upon its receipt, Plaintiff went directly to Dr. Carothers office to discuss the issue. (SF 15). Dr. Carothers told the Plaintiff that she wanted to talk to her later, however, the Plaintiff insisted that Dr. Carothers tell her immediately about the change in her schedule. (SF 16). Dr. Carothers told Plaintiff that she was going to be transferred to an 8th grade English position at Eagle View Middle School and provided the Plaintiff with a letter from Dr. Harold Bricker. (SF 17).

Plaintiff concedes that the District had the contractual right to involuntarily transfer her to the middle school. (SF 18). Indeed, the Plaintiff was at all times a member of the Cumberland Valley Education Association ("CVEA"), and pursuant

6

to a collective bargaining agreement between the District and the CVEA the District had the right to involuntarily transfer teachers to different positions. (SF 20, 21).

Plaintiff testified that the essential functions of a middle school teacher are basically the same as those of a high school teacher. (SF 22). Plaintiff's wage and benefits stayed the same after she was transferred to the 8th grade position. (SF 23). The Plaintiff had the same number of classes in the middle school as in the high school. (SF 24).

Some explanation of Plaintiff's medical issues is necessary as a factual backdrop. Plaintiff was first diagnosed with Obsessive Compulsive Disorder ("OCD") in the 1970s. (SF 25). Plaintiff first notified the District about her OCD in 1998 by presenting the District with a letter from her doctor, Richard Fonte, M.D. (SF 26, 27). Plaintiff testified that her OCD has no real impact on her classroom performance. (SF 28).

Plaintiff is a Type 1 diabetic, thus she must inject two kinds of insulin to maintain appropriate blood sugars. (SF 30). The entire process of checking her blood sugars and injecting the appropriate insulin shot takes approximately three to five minutes. (SF 31).

On January 20, 2003, Dr. Fonte wrote a medical note which Plaintiff

presented to the District regarding Plaintif's OCD condition. (SF 32). On January 26, 2003, Plaintiff's treating physician for her diabetes, Mark Potter, M.D., sent the District a letter informing them of the Plaintiff's diabetic condition. (SF 33). Thereafter, on March 6, 2003, Dr. Potter wrote a letter to the District on behalf of Plaintiff and requested time off from work so that the Plaintiff could stabilize diabetes management. Plaintiff was granted the requested time off. (SF 34).

Prior to the start of the 2004-2005 school year, the Plaintiff requested two medical accommodations: (1) remain at the high school; (2) times to test blood sugars in the mid-morning and mid-afternoon at the middle school. (SF 35). On or about August 17, 2004, the Superintendent, Dr. Walker, wrote Plaintiff an email regarding Plaintiff's request to test her blood sugars. The email stated, "I have been out on vacation and have not called the doctor for verification of the exact times. His letter states 'mid-morning, lunchtime, and mid-afternoon.' There will be no problem accommodating the doctor's request. I have spoken to Mrs. Wishard and requested that appropriate accommodations be made. A letter will be forthcoming later this week to that effect." (SF 36).

On August 18, 2004, Dr. Walker wrote the Plaintiff and stated, "It would be nice to have a face-to-face conversation with you to discus these issues, as I have offered in the past . . .I have stated that we will work with you on this and we will.

8

The offer to meet is still open." (SF 37).

On June 30, 2004, Dr. Potter wrote a medical note regarding Plaintiff's diabetic condition which was presented to the District. (SF 38). On July 7. 2004, Dr. Fonte provided Dr. Walker a letter regarding Plaintiff's OCD condition. (SF 39). With regard Plaintiff's diabetes and OCD, no doctor informed the District that it would be physically impossible for Plaintiff to work at the Middle School. (SF 48).

On August 24, 2004, Dr. Walker wrote Plaintiff a letter regarding testing times for her blood sugars. (SF 41). On August 25, 2004, the Plaintiff wrote Dr. Walker an email regarding checking her blood sugars with the school nurse. (SF 42). On August 27, 2004, Dr. Walker sent the Plaintiff another email requesting a meeting to discuss her medical accommodations. (SF 43). Plaintiff declined to meet face-to-face with Dr. Walker to discuss her medical conditions and requests for accommodations. (SF 47). Plaintiff continues to receive accommodations for her disabilities (SF 52) and was never denied class coverage assistance when she requested time to test her blood sugars. (SF 53).

On December 2, 2005, Plaintiff applied for an 11th grade teaching position in the High School. (SF 54). Plaintiff requested that she be transferred to that position (SF 55), however, a District employee does not have the contractual right

9

to a position transfer. (SF 56). The Plaintiff was afforded an opportunity to interview for the position. (SF 57). Approximately 60 to 80 candidates applied for the position. (SF 58). Four candidates, including Plaintiff was granted interviews. (SF 59).

Plaintiff interviewed for the position on February 3, 2006. (SF 60). She was interviewed by Lynette Snyder, John Gallagher and Mark Blanchard. (SF 61). An evaluation/scoring rubric was used with al the candidates and the interviewers took turn asking Plaintiff pre-selected questions. (SF 62, 63). All of the candidates were asked the same questions. (SF 64). Plaintiff's interview lasted approximately twenty minutes. (SF 65).

The three interviewers all filled out the scoring rubric and determined that Plaintiff was not one of the top candidates. (SF 66-68). Plaintiff was, however, given the top score on all of the interviewer's rubrics with regard to her teaching experience. (SF 69).

The position was given to Emily Nesibit, who scored the highest of all candidates. (SF 70). Ms. Nesbit was born in 1982. (SF 71). She graduated magna cum laude from IUP University with a 3.95 grade point average, was named to the Dean's List every semester that she was a student at IUP, was a provost scholar for four years, was President of the IUP Chapter of the National Council of Teachers

of English, was an All American Collegiate Scholar, was an Outstanding English Scholar for four years, and she student taught at the Indiana Area School District. (SF 72).

No District employee ever indicated to Plaintiff that the decision not to hire her to the 11th grade position was because of her age. (SF 73). No comments were made by any individual that interviewed the Plaintiff regarding her age. (SF 74). At the time the Plaintiff was transferred to the middle school, there was a mix of older and younger teachers. (SF 75).

On October 5, 2009, Plaintiff submitted a letter of resignation. (SF 77).

## IV. DISCUSSION

### A. ADA Claim

Within Count I of the Amended Complaint, Plaintiff alleges that the Defendants discriminated against the Plaintiff based on her disabilities (diabetes and OCD) when she was involuntarily transferred to the 8th grade English position.

As an initial matter, we note that although not yet directly addressed by the Supreme Court of the Third Circuit Court of Appeals, the overwhelming authority of our sister federal courts leads us to adopt the conclusion that no individual liability exists under the ADA. *See Boggi v. Medical Review and Accrediting Council*, 2009 WL 291022 (E.D. Pa. Sep. 15, 2009); *Thomas v. Penn United*

11

*Technology*, 2009 WL 922477, at *2 (W.D. Pa. Apr. 3, 2009); *Koslow v. Pennsylvania*, 302 F. 3d 161, 178 (3d Cir. 2002)("[T]here appears to be no individual liability for damages under Title I of the ADA."); *Emerson v. Thiel Coll.,* 296 F. 3d 184, 189 (3d Cir. 2002)(finding individuals not liable under Title III of the ADA "comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA."). Accordingly, the ADA claims against the individual Defendants shall be dismissed.

Further and in any event, Plaintiff a not established a *prima facie* case of disability discrimination under the ADA. To establish such a claim, a plaintiff must show that she is a qualified individual with a disability and that she suffered an adverse employment action as a result of the discrimination. *Tice v. Centre Area Transp. Auth.*, 247 F. 3d 506, 512 (3d Cir. 2001).

Significantly, Plaintiff simply has not and cannot establish that she suffered an adverse employment action. The ADA prohibits discrimination against qualified individuals with disabilities in regard to "advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12113(a). It is well settled that a change in buildings or office conditions is not considered an adverse employment action, nor are a lateral transfer, or changes in title or reporting relationships considered as

such. *See Shaner v. Synthes*, 204 F.3d 494, 506 (3d Cir. 2000); *Hunter v. Rowan University*, 2007 WL 1038760, at *5 (D.N.J. Mar. 30, 2007); *Langley v. Merck & Co., Inc.*, 186 Fed. Appx. 258, 261 (3d Cir. 2006); *Gablabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Plaintiff's transfer to the 8th grade position simply does not qualify as an adverse employment action under the statute and the jurisprudence of the ADA.[3]

Further, Plaintiff has not presented any evidence to support the notion that Defendants discriminated against her because of her alleged disabilities. Plaintiff's allegations of discrimination only began *after* Plaintiff was involuntarily transferred to the 8th grade position. Previously, for approximately 25 years, the District properly accommodated Plaintiff's conditions. Moreover, once Plaintiff's transfer to the Middle School was impending, the District immediately engaged her in an interactive process regarding her accommodations. The Plaintiff has not presented any evidence that the District's actions were a pretext for discrimination.

Additionally, Plaintiff's claim that she was denied a reasonable accommodation also fails. To prevail on this claim, a plaintiff must show: "(1) the

---

[3] It is well to note that Plaintiff's compensation was not altered as a result of the transfer, and that she taught the same number of classes in the middle school as she did in the high school.

employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the plaintiff in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the defendant's lack of good faith." *Taylor v. Phoenixville School Dist.*, 184 F. 3d 296, 312 (3d Cir. 1999). The touchstone of the law of reasonable accommodations in the Third Circuit is the requirement that an employee initiate and engage in an "interactive process" with the employer regarding the employee's need for an accommodation." *Williams v. Philadelphia Housing Auth.*, 380 F. 3d 751, 772 (3d Cir. 2004).

Here, the record is substantial that the District engaged the Plaintiff in an interactive process with regard to her requests for accommodations. Specifically, Plaintiff was granted the accommodation regarding her diabetes. Further, to the extent the Plaintiff alleges that the Defendants failed to accommodate her by transferring her back to the 11th grade position, such request by Plaintiff is not a proper request for an accommodation. There is nothing contained in any of the letters penned by Plaintiff's doctors that indicate she could not perform the functions of an 8th grade teacher. Thus, even though Plaintiff would have preferred to remain in the high school, she cannot morph her preference into an actionable request for an accommodation. Manifestly, she also cannot transform

14

dissatisfaction with her teaching assignment into an ADA claim.

Accordingly, for all of the foregoing reasons, Plaintiff's ADA claims must be dismissed as a matter of law.

**B.     ADEA Claim**

In Count II of the Amended Complaint, Plaintiff contends that the District discriminated against her on the basis of age, in violation of the ADEA. Just as with the ADA, the ADEA does not provide for individual liability. *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n. 29 (3d Cir. 2006). Thus, the ADEA claims shall be dismissed against the individual Defendants.

The ADEA makes it unlawful to "fail or refuse to hire or to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.§ 623. To establish an ADEA claim, a plaintiff must show direct evidence of discrimination. In the absence of direct evidence, a *prima facie* case may be established by demonstrating the following four factors by a preponderance of the evidence:

(1)     the plaintiff belongs to a protected class;

(2)     the plaintiff applied for and was qualified for the position;

(3)     that despite her qualification she was rejected; and

(4) after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position.

*Bray v. MarriottHotels*, 110 F.3d 986, 990 (3d Cir. 1997); *Barber v. CSX Distribution Services*, 68 F.3d 694, 698 (3d Cir. 1995). The burden of proof would then shift to the employer to dispel the inference by showing a legitimate business reason for not selecting the applicant. *Id*; *see also, Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir. 1991).

Here, there is utterly no direct evidence of discrimination. Nor does Plaintiff establish any of the above-listed factors by a preponderance of the evidence. The record indicates that the Plaintiff had the lowest score among all three of the interviewers, notwithstanding receiving the highest ranking for experience. While the individual that was selected for the job was younger, as fully set forth hereinafter, she was also highly qualified for the position. The record is simply devoid of any indicia of discrimination on the part of the Defendants.

Accordingly, for the foregoing reasons, Plaintiff's ADEA claim shall be dismissed.

### C.  PHRA Claim

Count III contains a cause of action pursuant to the PHRA, which shall be

dismissed as well. Claims of discrimination made pursuant to the PHRA are analyzed under the same standards as the ADA and the ADEA. Thus, for the reasons discussed herein, the Plaintiff's PHRA claim shall be dismissed as well.

### D. Retaliation Claim

Within Count IV of the Amended Complaint, Plaintiff brings a retaliation claim against all Defendants pursuant to the ADA, ADEA, Title VII and the PHRA. Once again, none of these claims survive against the individual Defendants because no individual liability exists under any of these statutes. *See Cohen v. Temple Physicians, Inc.*, 11 F. Supp. 2d 733, 736-37 (E.D. Pa. 1998) (Title VII, the ADA, ADEA, and PHRA are all interpreted consistently with one another such that individual employees are not to be held liable under these Acts).

Plaintiff's retaliation claim under the ADA, ADEA, and PHRA necessarily fails because, as noted above, Plaintiff has failed to establish that the District engaged in any conduct that violates any of the statutes. Further, although Plaintiff purports to bring a Title VII retaliation claim, Plaintiff has failed to come forward with *any* evidence of any kind that the District retaliated against her (or even discriminated against her) on the basis of her sex, religion, national origin, or race, thus, her purported retaliation claim pursuant to Title VII fails as well.

For the foregoing reasons, Count IV of the Plaintiff's claim shall be

dismissed as well.

## V. CONCLUSION

Based on all of the foregoing, the Defendants' Motion for Summary Judgment shall be granted. All Counts of the Amended Complaint shall be dismissed and this matter shall be closed. An appropriate Order shall issue.